## GREEN v. CITY of CORAL GABLES
### 80-315-AP
Circuit Court, Eleventh Circuit, Appellate Division
August 20, 1981

Bailey and Dawes, for petitioners/appellants.

Robert D. Zahner, for respondent/appellee.

Petitioners, GERALD GREEN and BARBARA GREEN, his wife, seek review of a resolution of the Commission of the City of Coral Gables which upheld a decision by the Coral Gables Board of Adjustment

approving architectural plans of Respondent, BENIGNO NIETO. This decision gave Mr. Nieto the right to erect a residential structure on Lot 12, Block 38, on Majorca Avenue in Coral Gables.[1]

The record demonstrates that the area of Nieto's single lot is approximately 7500 square feet, and is 50 feet wide. In late 1979, Nieto applied for a variance to change the facing of his lot. This application was successfully opposed by the Petitioners and their neighbors. The Board of Adjustment voted unanimously to send Nieto's architectural plans back to the Board of Architects for restudy, in that the plans were not in keeping with the neighborhood.

Several months later, Nieto's architect submitted new plans to the Board of Architects. The only exception from the first set of plans was that the facing of the building had been changed with a door now projecting on Majorca Avenue. The plans, however, did not satisfy Petitioners other objections which included: the walls of the house came up to the set-back lines; concrete awnings over the windows would project from the building two feet into the setback; most of the trees on the lot would be obliterated; the building did not conform to the architectural style prevalent in the neighborhood; and finally, the house was too large for the lot.

Petitioners appealed to the Coral Gables Board of Adjustment to revoke the Board of Architects approval of the plans. A hearing was held on September 8, 1980 where evidence was presented and arguments were made by both sides. The Petitioners argued that the set of plans was out of character with the neighborhood for several blocks in the vicinity; that the main building structure exceeded 45% of the lot, contrary to an historical interpretation of the Coral Gables City Code; that the plans violated Section 6.01 of the City Zoning Code in that a part of the building infringed into the setback; that the removal of all the endangered trees would violate the new Tree Preservation Ordinance of Coral Gables adopted August 11, 1980; and, that no variance was requested and no hardship was ever shown by Respondent. The Petitioners lost the appeal.

Having lost the appeal, Petitioners timely appealed to the City Commission of Coral Gables. The Commission consists of five members. After listening to the evidence, Commissioner Thompson moved to deny Petitioners appeal. Three Commissioners (a majority) voted against the motion. However, because Section 14.01 of the Coral Gables Zoning Code requires a four-fifths vote of the Commission to overturn the

---

[1]The Petitioners are the owners of the adjacent Lot 13, and they contest the Respondent's right to erect such a structure.

Board of Adjustment, Petitioner's appeal was denied. Petitioners further argue in these proceedings that the resolution denying Petitioner's appeal did not receive the three votes required by the City Charter, and that to allow Respondent to build his house would be based upon a resolution of only two of the five commissioners (less than a majority vote).

We reverse the resolution of the City Commission of the City of Coral Gables on the grounds that the architectual plans did not conform with Sections 9.01 and 9.02[2] of the City of Coral Gables Zoning Code, and that there had been neither a variance requested nor any showing of hardship meriting a variance.

The style of Respondent's proposed structure was described as a "kind of updated French". Mr. Dick Schuster, the senior member of the Board of Architects, felt that in three or four years the aging effect would enable the building to fit into the neighborhood. However, as Petitioners correctly assert, the Zoning Code makes no provision for such time flexibility. We agree with the principle that zoning regulations which tend to preserve the residential or historical character of a neighborhood and enhance the aesthetic appeal of a community are considered valid exercises of the police power as relating to the general welfare of the community. *Moviematic Ind. v. Board of County Comm.,* 349 So2d 667 (Fla.3rd DCA 1977). Moreover, there has been no showing of a variance request or any hardship. In *Josephson v. Autry,* 96 So2d 784 (Fla. 1957) the Court stated in reference to Boards of Adjustment:

". . . Boards of Adjustment or Zoning Boards of Appeals are customarily provided for by the ordinances to examine into situations where strict adherence to the letter of the

---

[2]Section 9.01 states in relevant part:

"Except as provided for in Section 9.011 of this ordinance, all buildings hereinafter constructed, reconstructed, altered or added to shall be of classical style of Colonial, Spanish, Venetian, Italian or other Mediterranean or similar harmonious architecture. It shall be the duty and responsibility of the Board of Architects to determine in each and every case whether or not the submitted plans comply with the type of architecture set forth hereinabove and suggest to the designing architect such changes as would bring the plan into conformity. The Board of Architects shall require such changes in design of the structure so as to preserve the traditional, aesthetic treatment and excellence of design of the community."

Section 9.02 states in relevant part:

"The owner shall require that his plans be designed in such a manner as to enhance the overall architectural character of the city, neighborhood and street."

ordinance would produce a unique or special hardship on the particular property owner . . . Historically, these appeal boards may grant relief in connection with such problems as setback lines, area and height restrictions, sidelot lines and the like when not contrary to the public interest." (at 780)

Although there is evidence that the plans infringed into setback areas, there has been no showing of any hardship. An exceptional and unique hardship to the individual landowner, unique to that parcel of property and not shared by property owners in the area, is an essential prerequisite to the granting of a "hardship" zoning variance. *City of Miami v. Franklin Leslie, Inc.,* 179 So2d 622 (Fla.3rd DCA 1965). In addition, if the hardship is one that is common to the area, the remedy is to seek a change of the zoning for the neighborhood rather than to seek change through a variance for an individual owner. *Board of Adjustment of Ft. Lauderdale v. Kremer,* 139 So2d 448 (Fla.2nd DCA 1962). The Respondent has made no showing that his hardship differs from any of the neighboring homeowners, and, therefore, he should comply with the ordinance.

As to the Petitioners invitation to determine the merits of the conflict issue between a city charter and a city ordinance, we decline to reach such sensitive and difficult questions and reverse solely upon the aforementioned grounds.

REVERSED.